IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD DUWAYN DOBKINS,

    Plaintiff,

vs.                                                                                     Civ. No.  08-796 JP/RLP

CHIEF CIVIL JUDGE WILLIAM F. LANG,
DR. CAROLYN LEWIS, ROBIN JONES,
NANCY ABYETA, SPECIAL DV COMMISSIONER
SANCHEZ, and JUDGE OTERO, 13TH Judicial
District Court,

    Defendants.

MEMORANDUM OPINION AND ORDER

On October 14, 2008, Defendants State Chief District Court Judge William F. Lang (civil division), Dr. Carolyn Lewis, Special Domestic Violence Commissioner Charles Sanchez, and State District Court Judge Violet C. Otero filed a Motion to Dismiss Plaintiff's Complaint and Supporting Memorandum (Doc. No. 14).  Having reviewed the briefs[1] and relevant law, the Court concludes that the Motion to Dismiss Plaintiff's Complaint and Supporting Memorandum should be granted and Plaintiff's claims against Chief Judge Lang, Dr. Lewis, Commissioner Sanchez, and Judge Otero should be dismissed with prejudice.  In addition, the Court concludes that Plaintiffs' claims brought on behalf of his wife, Christine Duncan, should be dismissed without prejudice.  Finally, the Court concludes that the Plaintiff's claims against Defendants Robin Jones and Nancy Abeyta should be dismissed *sua sponte* with prejudice.

---

[1]In addition to a response brief, Plaintiff filed two identical supplemental briefs or surreplies (Doc. Nos. 31 and 34) without leave of the Court.  Under the Local Rules, "[t]he filing of a surreply requires leave of the Court."  D.N.M. LR-Cv 7.4(b).  Since Plaintiff did not seek leave of the Court to file these two surreplies, the Court need not rely on those surreplies in deciding the motion to dismiss.  However, in the interest of justice and considering Plaintiff's *pro se* status, the Court has nonetheless taken the surreplies into consideration.

*A. Plaintiff's Civil Rights Complaint Pursuant to 42 U.S.C. §1983 (Complaint)*

Plaintiff filed a *pro se* §1983 complaint on August 29, 2008 against Chief Judge Lang, Judge Otero, Commissioner Sanchez, Dr. Lewis (apparently a psychiatrist at the University of New Mexico Mental Health Center), Robin Jones (Christine Duncan's legal guardian) and Nancy Abeyta (an employee with Senior Living Systems where the Court assumes Ms. Duncan resides).

Plaintiff first makes several allegations in his Complaint on behalf of Ms. Duncan. Plaintiff contends that Ms. Duncan was falsely arrested and imprisoned, was incompetent to enter a plea, and is suffering from medical neglect while imprisoned.

Next, Plaintiff contends in his Complaint that when Dr. Lewis petitioned Chief Judge Lang to appoint a guardian to protect Ms. Duncan from Plaintiff, Dr. Lewis falsely accused Plaintiff of committing domestic violence against Ms. Duncan by injuring her brain. Plaintiff asserts that Dr. Lewis actually injured Ms. Duncan's brain. Plaintiff further contends in his Complaint that he twice requested Chief Judge Lang to hold hearings on Plaintiff's petitions to be appointed Ms. Duncan's guardian and that Plaintiff once requested Chief Judge Lang to hold a hearing on his petition to be appointed Ms. Duncan's conservator. Chief Judge Lang denied Plaintiff's requests for hearings and Plaintiff's various petitions. Chief Judge Lang appointed Ms. Jones of the Office of Guardianship to be Ms. Duncan's legal guardian.

According to Plaintiff's Complaint, Ms. Jones subsequently forced or conspired with Ms. Abeyta to make a false police complaint accusing Plaintiff of committing domestic violence against Ms. Duncan. Plaintiff asserts in his Complaint that this police complaint resulted in a restraining order forbidding Plaintiff from visiting Ms. Duncan. This restraining order has been

in effect since July 17, 2007.[2]  Plaintiff asserts in his Complaint that Ms. Abeyta's police complaint led to proceedings before Commissioner Sanchez in which Ms. Jones allegedly committed perjury by testifying against Plaintiff.  Commissioner Sanchez apparently did not rule in Plaintiff's favor.  Plaintiff then appealed Commissioner Sanchez's decision to Judge Otero who the Court gathers from the Complaint affirmed Commissioner Sanchez.  Plaintiff further alleges in the Complaint that he was falsely imprisoned for 10 days for contempt of court.[3]  In his request for relief, Plaintiff mentions that his constitutional right to marriage was violated.

*B. Standard of Review Under Fed. R. Civ. P. 12(b)(6)*

Chief Judge Lang, Judge Otero, Commissioner Sanchez, and Dr. Lewis move to dismiss Plaintiff's claims against them under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded allegations as true and views them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). Rule 12(b)(6) requires that the complaint set forth the grounds of plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007). While the complaint does not need to include detailed factual allegations, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In other words, dismissal of a complaint under Rule 12(b)(6) is proper only where it is obvious that the plaintiff failed to set forth "enough facts to

---

[2] Plaintiff also refers to a second restraining order in his Complaint.

[3] The Complaint only refers to 10 days of imprisonment but Plaintiff clarified in his Supplament [sic] to a Motion (Doc. No. 31) at 1, filed Dec. 10, 2008, that the 10 days of imprisonment was for contempt of court.

state a claim to relief that is plausible on its face." *See id.*  Finally, a *pro se* complaint is held to a less stringent standard than a pleading drafted by a lawyer. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

*C. Discussion*

    *1. Chief Judge Lang, Judge Otero, Commissioner Sanchez, and Dr. Lewis' Arguments in Support of Their Motion to Dismiss*

        a.  Plaintiff's Claims Made on Behalf of Ms. Duncan

Chief Judge Lang, Judge Otero, Commissioner Sanchez, and Dr. Lewis argue that Plaintiff cannot bring claims on behalf of Ms. Duncan because he is not the real party in interest as to those claims.  A *pro se* litigant has the right to represent himself in federal court.  28 U.S.C. §1654.  That right to appear *pro se*, however, does not extend to representing another person. *See, e.g., Malone v. Nielson*, 474 F.3d 934, 936 (7th Cir. 2007); *Pridgen v. Andresen*, 113 F.3d 391, 393 (2nd Cir. 1997).  Consequently, Plaintiff cannot represent Ms. Duncan as to any claims she might have.  The claims Plaintiff attempts to bring on Ms. Duncan's behalf will, therefore, be dismissed without prejudice.

        b.  Failure to State a §1983 Claim

Section 1983 imposes liability for violations of rights protected by the United States Constitution or federal law which were committed under color of state law.  Chief Judge Lang, Judge Otero, Commissioner Sanchez, and Dr. Lewis argue that Plaintiff has failed to state a plausible §1983 claim based on an alleged infringement of the constitutional right to marriage, the denial of Plaintiff's requests for appointment as a guardian or conservator, the denial of Plaintiff's requests for hearings on those petitions, or alleged defamatory actions.

*(1) A Constitutional Right to Marriage*

The United States Supreme Court has made it clear that under the due process clause of the Fourteenth Amendment of the United States Constitution people have the freedom to marry or not to marry. *Loving v. Virginia*, 388 U.S. 1, 12 (1967). Nonetheless, "reasonable regulations that do not significantly interfere with <u>decisions to enter into</u> the marital relationship may legitimately be imposed." *Zablocki v. Redhail*, 434 U.S. 374, 386 (1978)(emphasis added). The constitutional right to marriage, therefore, clearly applies to the initial decision to marry. That is not the case here. Plaintiff does not argue that he was somehow prevented from marrying Ms. Duncan. Hence, any claim that any of the Defendants violated the constitutional right to marriage will be dismissed with prejudice for failing to state a plausible §1983 claim.

*(2) A Constitutional or Federal Right to be Appointed a Guardian or Conservator, and to Have Hearings Held on the Issue of Guardianship or Conservatorship*

Plaintiff fails to show how being denied a guardianship or conservatorship, or being denied hearings on his petitions for appointing himself as a guardian or conservator is either a basis for federal jurisdiction, or a violation of a constitutional right or federal law. As an initial matter, the Court notes that "[t]he Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the [federal] district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006)(quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The Rooker-Feldman doctrine appears to apply in this case to deprive this Court of federal jurisdiction over Plaintiff's claim regarding Chief Judge Lang's denial of Plaintiff's petitions to be appointed guardian or conservator. Next, Plaintiff does not provide any facts or assertions in his Complaint that Chief Judge Lang violated the constitution or federal

law by exercising his discretion to appoint a guardian other than Plaintiff.  Under state law, Plaintiff does not have an exclusive right to be appointed a guardian or conservator over Ms. Duncan.  In fact, the New Mexico Adult Protective Services Act allows the New Mexico Aging and Long-Term Services Department to "petition the court for the appointment of a guardian or conservator if the department determines that a no less restrictive course of care or treatment is available that is consistent with the incapacitated adult's welfare and safety." NMSA 1978, §27-7-24 (F)(1989).  Chief Judge Lang exercised his authority under state law and he was not required by the constitution or federal law to appoint Plaintiff as a guardian or conservator.

Furthermore, for Plaintiff to state a due process claim under the Fourteenth Amendment based on Chief Judge Lang's rulings with respect to Plaintiff's petitions for appointment as a guardian or conservator, Plaintiff must allege sufficient facts to demonstrate that Chief Judge Lang deprived Plaintiff of his life, liberty, or property without due process of law.  U.S. Const., Amdt. 14, §1.  Plaintiff has failed to set forth any facts to show that not being appointed a guardian or conservator somehow deprived him of life, liberty, or property which rightfully belonged to him.  Finally, there can be no procedural due process violation under the Fourteenth Amendment unless Plaintiff "was denied a fair forum for protecting his state rights."  *See Atencio v. Board of Educ. of Peñasco Independent School Dist. No. 4*, 658 F.2d 774, 779-80 (10th Cir. 1981).  Plaintiff states in his Complaint that Chief Judge Lang made the following "fallacious" argument in deciding to deny Plaintiff's requests for hearings: "Chief Justice Lang: Richard damaged Christine's brain.  I, Justice Lang, will not grant him a hearing to prove he did not do it, therefore it is proven that Richard Dobkins damaged Christine's brain."  Complaint at 2, 3.  This contention fails to rise above the level of speculation.  *See Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007)(plaintiffs are required under Fed. R. Civ. P. 8 "to state their

claims intelligibly so as to inform the defendants of the legal claims being asserted;" additionally it is "not the district court's job to stitch together cognizable claims for relief...."). Moreover, the fact that Chief Judge Lang denied Plaintiff's requests for hearings does not mean that Plaintiff was denied a fair forum to argue why he should be appointed guardian or conservator. In fact, Plaintiff was allowed to present his petitions to Chief Judge Lang for fair consideration. Plaintiff, therefore, was not denied a fair forum and cannot state a plausible §1983 procedural due process claim. The Court concludes that Plaintiff has not stated a plausible §1983 claim based on being denied an appointment as a guardian or conservator, or based on having his requests for hearings on his petitions for appointment as a guardian or conservator denied. Those claims will be dismissed with prejudice.

*(3) Alleged Defamation*

Plaintiff also appears to be alleging libel or defamation claims for being falsely accused of committing domestic violence. The Court, in liberally construing Plaintiff's Complaint, will assume that Plaintiff is alleging violations of the Fifth and Fourteenth Amendments with respect to any libel or defamation claims. In addressing reputational damages under the Fifth Amendment, the Tenth Circuit held in *Coen v. Runner*, 854 F.2d 374, 378 (10th Cir. 1988) that "the scope of fifth amendment property rights is determined by reference of state law." In that case, the Tenth Circuit examined the Wyoming Constitution to determine if it established a right to be free from libel. The Tenth Circuit found that the relevant provision under the Wyoming Constitution "provide[d] only that the right to free speech and press shall be subject to a potential cause of action for libel." *Id.* That provision did not create a "property interest in being free from libel." *Id.* at 379. Consequently, the Tenth Circuit concluded that the plaintiff failed to state a §1983 claim. New Mexico's constitution, N.M. Const. Art. 2, §17, virtually

mirrors the pertinent Wyoming constitutional provision discussed in *Coen*.  Applying *Coen* to this case, the Court concludes that Plaintiff also does not have a Fifth Amendment property interest in his reputation.  Plaintiff, therefore, has failed to state a plausible §1983 claim under the Fifth Amendment with respect to his reputation.

Under the Fourteenth Amendment, if "'a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name."  *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004)(internal quotations and citations omitted).  However, damage to reputation alone does not implicate the Fourteenth Amendment procedural due process clause.  *Id.* (citations omitted).  In other words, the plaintiff must show that this liberty interest was deprived without due process, i.e., that adequate process was not available to clear the plaintiff's name.  *Segal v. City of New York*, 459 F.3d 207, 214 (2nd Cir. 2006).  In this case, Plaintiff had several opportunities to clear his name in the proceedings before Chief Judge Lang, Commissioner Sanchez, and Judge Otero.  Consequently, the Plaintiff has not stated a plausible §1983 Fourteenth Amendment procedural due process claim regarding his reputation.

To state a §1983 Fourteenth Amendment substantive due process claim regarding his reputation, Plaintiff must allege facts which show that "the challenged government action would 'shock the conscience of federal judges.'"  *Livsey v. Salt Lake County*, 275 F.3d 952, 957 (10th Cir. 2001)(internal quotations and citations omitted).  "'To satisfy this standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power.  Instead, a plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience

shocking.... The level of conduct required to satisfy this additional requirement cannot precisely be defined, but must necessarily evolve over time from judgments as to the constitutionality of specific government conduct.'" *Id*. (quoting *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998)(internal quotations and citations omitted)). In this case, Plaintiff has failed to allege facts which would demonstrate that any of the Defendants acted in such an outrageous manner to have caused a significant magnitude of harm to Plaintiff. Hence, Plaintiff has not alleged facts in his Complaint which would constitute "truly conscience shocking behavior" by the Defendants. Without those alleged facts, Plaintiff has failed to state a plausible §1983 substantive due process claim under the Fourteenth Amendment with respect to his reputation. In sum, any claims based on damage to Plaintiff's reputation will be dismissed with prejudice.

> *c. Absolute Judicial Immunity for Chief Judge Lang, Judge Otero, and Commissioner Sanchez*

Next, Chief Judge Lang, Judge Otero, and Commissioner Sanchez claim they are entitled to absolute judicial immunity. A judge is absolutely immune from a §1983 suit for damages for judicial acts for which the judge has at least a semblance of subject matter jurisdiction. *See Lerwill v. Joslin*, 712 F.2d 435, 438 (10th Cir. 1983)(citing *Stump v. Sparkman*, 435 U.S. 349 (1978)). The defense of absolute judicial immunity is not defeated by allegations of conspiracy, bad faith, malice, or erroneous rulings. *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985); *Dorman v. Higgins*, 821 F.2d 133, 139 (2nd Cir. 1987)(citations omitted). *See also Lawrence v. Kuenhold*, 271 Fed. Appx. 763, 766 n.6 (10th Cir. 2008)("doctrine of judicial immunity now extends to suits against judges where a plaintiff seeks not only monetary relief but injunctive relief as well."). Judicial immunity is also extended to persons other than judges if those persons have duties which have "'an integral relationship with the judicial process.'" *Whitesel v.*

9

*Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000)(quoting *Eades v. Sterlinske*, 810 F.2d 723, 726 (7th Cir. 1987)).

Liberally construing Plaintiff's Complaint, I find it is clear that Plaintiff is accusing Chief Judge Lang and Judge Otero of wrongdoing for decisions made in their judicial capacities. Plaintiff does not contend in the Complaint that Chief Judge Lang and Judge Otero acted outside of their subject matter jurisdiction. In fact, Plaintiff admits in his response to this motion to dismiss that the judges have immunity. Motion to Respond to the Lawer [sic] who Filed the Motion to Dismiss (Doc. No. 17) at 2, filed Oct. 17, 2008. Chief Judge Lang and Judge Otero are, therefore, entitled to absolute judicial immunity for their actions and Plaintiff's claims against them will be dismissed with prejudice on this ground also.

Commissioner Sanchez, as a domestic violence special commissioner, is by state statute allowed to "perform such duties as assigned by the chief judge of the district in domestic violence proceedings." Rule 1-053.1(A), NMRA 1998. More specifically, domestic violence special commissioners are authorized to "review petitions for orders of protection and motions to enforce, modify or terminate orders of protection...." Rule 1-053.1(C)(1). Domestic violence special commissioners can also "conduct hearings on the merits of petitions for orders of protection and motions to enforce, modify or terminate orders of protection" and prepare recommendations for review and approval by the district court. Rule 1-053.1(C)(3) and (4). Plaintiff's Complaint maintains that Commissioner Sanchez held a hearing on the police complaint allegedly made by Ms. Abeyta which asserted that Plaintiff committed domestic violence against, presumably, Ms. Duncan. Holding a hearing on allegations of domestic violence is clearly a judicial act integral to the judicial process. In addition, Commissioner Sanchez acted within the general subject matter jurisdiction accorded him under Rule 1-053.1 by

holding a hearing on this issue which would affect any petition for order of protection or pre-existing order of protection. Hence, Commissioner Sanchez is likewise entitled to judicial immunity and Plaintiff's claims against Commissioner Sanchez will be dismissed with prejudice on this ground also.[4]

>   *d. Dr. Lewis*

Dr. Lewis claims that she is entitled to absolute immunity for petitioning Chief Judge Lang to appoint a guardian and for any testimony she may have given in court. Under the New Mexico Adult Protective Services Act, a person who has "reasonable cause to believe that an incapacitated adult is being abused, neglected or exploited shall immediately report that information to the [New Mexico Aging and Long-Term Services Department]." NMSA 1978, §27-7-30(A)(1989). In addition,

> Any person making a report pursuant to Section 27-7-30 NMSA 1978, testifying in any judicial proceeding arising from the report or participating in a required evaluation pursuant to the Adult Protective Services Act or any law enforcement officer carrying out his responsibilities under that act or any person providing records or information as required under that act shall be immune from civil or criminal liability on account of that report, testimony or participation, unless the person acted in bad faith or with a malicious purpose.

NMSA 1978, §27-7-31 (1989). Moreover, "all witnesses enjoy absolute immunity from civil liability under §1983 for their testimony...." *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994)(citing *Briscoe v. LaHue*, 460 U.S. 325 (1983)).

---

[4] Plaintiff's false imprisonment claim seems to be based on a contempt of court. Since Chief Judge Lang, Judge Otero, and Commissioner Sanchez are immune for their judicial actions which include finding contempt of court and imposing punishment for contempt of court, Plaintiff cannot bring a false imprisonment claim based on contempt of court against either Chief Judge Lang, Judge Otero, or Commissioner Sanchez.

In this case, the Complaint states that Dr. Lewis reported adult abuse (via the petition for guardianship) to Chief Judge Lang. The Complaint does not rule out the possibility that Dr. Lewis also reported the abuse to the New Mexico Aging and Long-Term Services Department or that Chief Judge Lang forwarded her petition for appointment of guardian to the New Mexico Aging and Long-Term Services Department.  In either those two scenarios, Dr. Lewis would be absolutely immune under the New Mexico Adult Protective Services Act for making that report and testifying as to that report, unless she acted in bad faith or with a malicious purpose.

Plaintiff argues that Dr. Lewis had bad faith or a malicious purpose because Dr. Lewis allegedly injured Ms. Duncan's brain and lied about Plaintiff causing the injury.  Plaintiff claims in his Complaint that Metropolitan Detention Center (MDC) booking pictures of Ms. Duncan show that her brain was injured between February 28, 2005 and April 26, 2005.  Plaintiff alleges the following in his Complaint: "I wonder if Dr. Caroline [sic] Lewis can prove with medical records that Christine was not an impatient [sic] at UNM Mental Health Center some time between Feb. 28, 2005 and April 26, 2005.  IF [sic] she can prove this, then she conclusively did not damage Christine's brain, because MDC booking pictures prove that Christine suffered global brain damage between these dates."  Complaint at 2.  Plaintiff continues later in the Complaint as follows:

> Based on empirical knowledge gained through experience of one dream proving the other in actual physical experience.  One dream proved factually true and it proves the truth of the other dream.  Based on revealed knowledge I make the aforementioned claim.  IF she does not confess to it, she will not be charged for it.
> I accuse her of it.  She has not proven that she did not do it.  Therefore, it is proven that she did do it.  A fallacious argument.  The same one she uses against me successfully.
> Dr. Carloline Lewis:
> Richard Damaged Christine's Brain
> A booking picture proves that I could not have done it, because I was in jail when it occurred. ...

*Id*.  These allegations fail to rise above the speculative level and do not plausibly indicate that Dr. Lewis actually injured Ms. Duncan and intentionally tried to blame Plaintiff for the brain injury.  Plaintiff has, therefore, not sufficiently pled that Dr. Lewis acted with bad faith or malicious purpose in petitioning for a guardian.  Hence, should the New Mexico Adult Protective Services Act apply to Dr. Lewis' actions, she would have absolute immunity under that Act.

Furthermore, there is no question that Dr. Lewis would nonetheless have absolute immunity for testifying as a witness in court. Finally, Plaintiff has failed to allege sufficient facts to show that Dr. Lewis' actions amounted to a plausible violation of a constitutional right or federal law in contravention of §1983.[5]  For these reasons, Plaintiff's claims against Dr. Lewis will be dismissed with prejudice on the ground of immunity.

### 2. *Ms. Abeyta and Ms. Jones*

The Court will also address *sua sponte* Plaintiff's claims against Ms. Abeyta and Ms. Jones to determine if those claims withstand Rule 12(b)(6) scrutiny.  A district court may *sua sponte* dismiss a plaintiff's claim under Rule 12(b)(6) if "'it is "patently obvious" that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'"  *Smith v. New Mexico*, 94 Fed. Appx. 780, 781 (10th Cir.), *cert. denied*, 125 S.Ct. 360 (2004)(quoting *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991)).

---

[5]To the extent that Dr. Lewis's actions could be construed as causing reputational damage to Plaintiff, the Court has already determined that Plaintiff has failed to state a plausible §1983 claim based on alleged defamation.

13

### a. Ms. Abeyta

Plaintiff's claims against Ms. Abeyta fail to plausibly state a §1983 claim for several reasons.  First, Plaintiff does not allege that Ms. Abeyta was acting under color of state law when she filed the police complaint.  If she was not acting under color of state law, Plaintiff cannot bring a §1983 claim against her.  Second, Ms. Abeyta is entitled to absolute immunity in connection with any testimony she may have given in court with respect to the police complaint against Plaintiff. Third, even if Plaintiff is alleging a defamation or libel claim against Ms. Abeyta for bringing a false police complaint, the Court has already found that such a claim does not constitute a plausible §1983 claim.  Fourth, if Plaintiff is alleging a §1983 malicious abuse of process claim against Ms. Abeyta, Plaintiff has also failed to state such a claim.  "The gravamen of [the tort of malicious abuse of process] is not the wrongfulness of the prosecution, but some extortionate perversion of <u>lawfully initiated process</u> to illegitimate ends."  *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994)(emphasis added).  Since Plaintiff contends that the initiation of the process by Ms. Abeyta making an allegedly false police complaint was unlawful, Plaintiff has not stated a plausible malicious abuse of process claim.

Finally, Plaintiff has failed to allege a plausible §1983 malicious prosecution claim against Ms. Abeyta.  The Tenth Circuit uses the common law elements of malicious prosecution as a "starting point" in determining whether there is a §1983 malicious prosecution claim. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1257 (10th Cir. 2007).  "The elements of the common law tort of malicious prosecution, as applicable in a § 1983 claim, are: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained

damages." *Id*. at 1258.  The ultimate question, however, is whether a plaintiff has proven a violation of the Fourth or Fourteenth Amendments.  *Id*. at 1257-58.  Going beyond the elements of the common law tort of malicious prosecution, the Tenth Circuit has held "that, at least prior to trial, the relevant constitutional underpinning for a claim of malicious prosecution under §1983 must be 'the Fourth Amendment's right to be free from unreasonable seizures.'" *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007)(citation omitted).  Moreover, the United States Supreme Court has held that "'it is evident that substantive due process [under the Fourteenth Amendment] may not furnish the constitutional peg on which to hang' a claim of malicious prosecution."  *Id*. at 918 (quoting *Albright v. Oliver*, 510 U.S. 266, 270 n. 4 (1994)). Procedural due process as guaranteed under the Fourteenth Amendment does not form the basis of a malicious prosecution claim where a plaintiff was not arrested and the Fourth Amendment would adequately protect the plaintiff's liberty interests.  *Id*. at 920.  Here, Plaintiff does not allege that Ms. Abeyta caused him to be confined or prosecuted criminally for domestic violence.  According to Plaintiff, the police complaint resulted only in the hearing before Commissioner Sanchez where Ms. Jones and Plaintiff apparently argued over the issue of guardianship.  Consequently, Plaintiff does not meet the first element of the common law tort of malicious prosecution.  Furthermore, without an arrest or seizure resulting from the police complaint, Plaintiff has failed to state a plausible malicious prosecution claim supported by either a Fourth or Fourteenth Amendment violation.  In sum, Plaintiff has failed to allege any plausible §1983 claim against Ms. Abeyta.  Plaintiff's claims against Ms. Abeyta will, therefore, be dismissed with prejudice.

*b.  Ms. Jones*

Plaintiff alleges that Ms. Jones committed perjury and forced or conspired with Ms. Abeyta to make a false police complaint against Plaintiff.  As with Ms. Abeyta and Dr. Lewis, Ms. Jones is entitled to absolute immunity for any testimony she gave as a witness in court, even if that testimony was false.  In addition, for the same reasons the Court rejected Plaintiff's §1983 claims against Ms. Abeyta regarding the police complaint, the Court likewise concludes that Plaintiff has failed to state a plausible §1983 claim against Ms. Jones for whatever involvement she may have had in making the police complaint. Plaintiff's claims against Ms. Jones will also be dismissed with prejudice.

IT IS ORDERED that:

1.  Motion to Dismiss Plaintiff's Complaint and Supporting Memorandum (Doc. No. 14) is granted;

2.  Plaintiff's claims brought on behalf of Ms. Duncan will be dismissed without prejudice; and

3.  the remainder of Plaintiff's claims will be dismissed with prejudice for failure to state plausible §1983 claims under Rule 12(b)(6).

_____
SENIOR UNITED STATES DISTRICT JUDGE